UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NUMBER 1:25-cv-62-LLK

CHARLES B.[1] PLAINTIFF

v.

FRANK BISIGNANO,
Commissioner of Social Security DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff filed a Complaint seeking judicial review pursuant to 42 U.S.C. § 405(b), of the Final Decision of the Commissioner denying his claims for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. [DN 1].[2] Plaintiff's Fact and Law Summary is at DN 17, the Commissioner's responsive Fact and Law Summary is at DN 19, and Plaintiff's Reply is at DN 20. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to determine this case, with any subsequent appeal to be filed directly to the United States Court of Appeals for the Sixth Circuit. [DN 14]. The matter is now ripe for determination.

After examining the administrative record, the Administrative Law Judge's (ALJ's) Decision, the arguments of the parties, and the applicable authorities, the Court finds that Plaintiff's two arguments are unpersuasive and that the ALJ's Decision is supported by substantial evidence and comports with applicable law. Accordingly, the Court will AFFIRM the Commissioner's Final Decision and DISMISS Plaintiff's Complaint.

[1] Pursuant to General Order 22-05, Plaintiff's name in this Report and Recommendation is shortened to first name and last initial.
[2] References to specific pages in the Court's Docket in this Memorandum Opinion will include the Docket Number and page number found in the red inked header at the top of the document.

## I. BACKGROUND

**Administrative History**. Plaintiff filed an application for DIB on September 11, 2022, alleging disability from June 7, 2019, at age 42 as a result of knee issues, shoulder problems, sciatica, and sleep apnea. [DN 13] at 237. His claims were denied initially and upon reconsideration. Plaintiff requested a Hearing before an ALJ which was granted. The hearing was conducted on December 22, 2023, by videoconferencing before ALJ Neil Morholt and with non-attorney representative John Sharpenstein attending on Plaintiff's behalf. Hearing Transcript, [DN 13] at 40. Also attending and testifying during the hearing was impartial vocational expert, Robert Piper. On February 28, 2024, the ALJ issued an unfavorable Decision finding that Plaintiff was not disabled within the meaning of the Act. [DN 13] at 22-33.

Plaintiff requested review of the ALJ's Decision by the Appeals Council. On March 7, 2025, the Appeals Council denied Plaintiff's request for review of the ALJ's Decision. [DN 13] at 5. At that point, the ALJ's Decision became the final decision of the Commissioner. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a). This Court will be reviewing the ALJ's Decision and the evidence that was contained within the administrative record at the time the ALJ rendered his unfavorable Decision. 42 U.S.C. § 405(g).

**The ALJ's Decision**. The ALJ's Decision denying Plaintiff's claim for DIB was based upon the five-step sequential evaluation process applicable in all Social Security disability cases. At Step One, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024 (Ex. 9D), and that he has not engaged in substantial gainful activity since June 7, 2019, the alleged onset date (20 CFR 404.1571 *et seq*.).

At Step Two, the ALJ found that Plaintiff has the following severe impairments: obesity; obstructive sleep apnea; degenerative disc disease of the lumbar spine; and degenerative joint disease and ACL tear of the right knee (20 CFR 404.1520(c)).

At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

As in any case that proceeds beyond Step Three, the ALJ must determine a claimant's residual functional capacity (RFC), which is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a), 404.1546(c). In making an RFC determination, the ALJ considers the record in its entirety including medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c). The ALJ found that, notwithstanding his impairments, Plaintiff retains the RFC to perform light work with certain limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except he occasionally can climb ramps, stairs, ladders, ropes, and scaffolds. He occasionally can kneel and crawl, but never crouch. The claimant occasionally can reach overhead bilaterally. He can have frequent exposure to unprotected heights, dangerous moving machinery, and vibration.

ALJ's Decision, [DN 13] at 27.

At Step Four, the ALJ found that Plaintiff is unable to perform any past relevant work (20 CFR 404.1565). The ALJ made additional findings that Plaintiff was born on November 25, 1976 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563); Plaintiff has a limited education (20 CFR 404.1564); and transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled,"

whether or not the claimant has transferable jobs skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

At Step Five, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform (20 CFR 404.1569). Accordingly, the ALJ found that Plaintiff has not been under a disability, as defined in the Social Security Act, from June 7, 2019, through the date of the decision (20 CFR 404.1520(g)). [DN 13] at 33.

## II. STANDARD OF REVIEW

The task in reviewing the ALJ's findings is limited to determining whether they are supported by substantial evidence and made pursuant to proper legal standards. *Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec*., 299 F.App'x 516, 522 (6th Cir. 2008). The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec*., 572 F.3d 272, 281 (6th Cir. 2009). In reviewing the record as a whole, the Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs*., 25 F.3d 284, 296 (6th Cir. 1994).

The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec*., 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the decision. *Id*. If it does, the court affirms the decision even in the face of

substantial evidence supporting the opposite conclusion. *Id*. As described by the Supreme Court, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec*., 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

**Plaintiff's Arguments**. Plaintiff's first argument is that "[t]he ALJ erred as a matter of law by failing to assess the expert[3] medical opinion of advanced practice registered nurse ("APRN") Tommy L. Bratcher at Sahetya Medical Group that the Plaintiff is limited to 'No driving until [obstructive sleep apnea ("OSA")] controlled' (Tr. 383) (Emphasis added) due to fatigue." [DN 17] at 14-15. Plaintiff contends that Nurse Bratcher's treatment notation of "No driving until OSA controlled" in his December 6, 2022, medical record was a medical opinion requiring a persuasiveness articulation by the ALJ. As a result of this alleged error, Plaintiff contends that his assessed RFC is not based upon substantial evidence. [DN 17] at 10. Secondly, Plaintiff posits that

[3] It is unclear why Plaintiff has added the term "expert" in referencing Nurse Bratcher's treatment note as an "expert medical opinion." Nurse Bratcher is a practitioner in Plaintiff's local medical clinic, Sahetya Medical Group. [DN 13] at 388. Nothing in the record indicates any specialized expertise Nurse Bratcher possesses, aside from having an advance practice registered nurse degree. Nurse Bratcher did not provide a Medical Source Statement, nor was he called as a medical expert to offer a medical opinion during Plaintiff's hearing. Social Security HALLEX manual, section I-2-5-32, defines medical experts ("MEs") as "physicians, psychologists, speech-language pathologists, and certain other types of medical professionals who provide impartial expert opinion evidence that an ALJ considers when making a decision about disability." The Court will separately address the "medical opinion" characterization later in this Memorandum Opinion.

the Commissioner erred as a matter of law by failing to properly evaluate Plaintiff's subjective complaints. [DN 17] at 20. Plaintiff claims the ALJ employed the wrong standard by indicating Plaintiff's statements were "not entirely consistent" with the record evidence instead of considering if the Plaintiff's statements "could be reasonably accepted as consistent." [DN 17] at 21. He contends that the ALJ's error in failing to adequately consider his subjective complaints resulted in an RFC, hypotheticals posed to the vocational expert, and Decision that were not based upon substantial evidence. [DN 17] at 23.

In Response, the Commissioner notes that Nurse Bratcher only assessed one functional limitation due to fatigue, and that was limiting Plaintiff to "No driving until OSA [obstructive sleep apnea] controlled." [DN 13] at 387. While conceding that the ALJ did not expressly evaluate Nurse Bratcher's limitation of "no driving," the Commissioner contends that Plaintiff has failed to show how the ALJ reversibly erred; even if the ALJ had considered Nurse Bratcher's limitation, it does not follow that the ALJ would have "included more restrictive limitations in the RFC due to the fatigue and daytime drowsiness." [DN 19] at 4. Lastly, the Commissioner avers that because the ALJ found at Step Five that Plaintiff could perform light work jobs—and two of the three identified jobs require no driving—that remand is not required. [DN 19] at 5. Finally, the Commissioner posits that the ALJ properly analyzed Plaintiff's subjective complaints under the regulations, agency policy, and relevant case law. [DN 19] at 10.

In Reply, Plaintiff continues to argue that the ALJ failed to properly "consider Nurse Bratcher's expert opinion and to provide a narrative explanation as to whether Nurse Bratcher's expert opinion regarding fatigue functional limitations is persuasive[.]" [DN 20] at 3. Plaintiff highlights the fact that the Commissioner concedes that the ALJ did not expressly evaluate Nurse Bratcher's limitation of "no driving" and maintains that "a full and fair consideration of the record

requires the ALJ to consider the 'fatigue' causing the limitation, and not only the limitation of 'no driving' itself." [DN 20] at 2. Finally, Plaintiff argues that the ALJ's Decision did not "build an accurate and logical bridge between the evidence and the result" because the ALJ did not fully and fairly consider and evaluate his subjective complaints in reviewing the record. [DN 20] at 4.

## III. DISCUSSION

At his hearing before ALJ Morholt, Plaintiff testified that he had a valid driver's license, but that he no longer drove because he had fallen asleep while driving and totaled his car. [DN 13] at 44. He lived on the family farm but gradually phased out tobacco, corn, cattle and hay production. [DN 13] at 46. Plaintiff testified to the ability to sit for only about an hour due to hip and back pain and problems with his left leg swelling since having had cellulitis; he estimated he could stand for about ten minutes and walk about fifty feet before needing to stop because of pressure on his hips and knees; he could lift only about five pounds because of painful shoulders and poor grip; he used a motorized chair to get around in his house; he has been diagnosed with diabetes and bells palsy and needed daily hour-long naps and elevation of his legs; he had sleep apnea and struggled to keep his mask on at night; and had attention of only about five minutes due to pain or falling asleep. [DN 13] at 55-60, 62.

At issue is in this case is a treatment note from Plaintiff's December 6, 2022, office visit with APRN Bratcher, when he sought treatment for shoulder pain following a car wreck and for flu symptoms:

> Charles is a 46 year old male who presents today with complaints of left shoulder pain post car wreck on Saturday. Pt fell asleep driving. Denies LOC. c/o left shoulder soreness after his wreck. Taking otc meds for relief. He complains of cough, congestion, headache, bodyaches (sic), chills, fever x 2 days. Denies cp/soa/wheezing. Positive congested cough, has not taken anything for symptoms. He complains of falling asleep all the time. That was the reason for the wreck, he

> fell asleep while driving. Supposed to be wearing his CPAP due to severe sleep apnea but wakes up starving for air and rips off his mask. Working with his DME for a different style mask.

[DN 13] at 383.

The Treatment portion of the medical record includes a prescription for Tamiflu, instructions to work with DME [durable medical equipment] for a different CPAP mask, and a notation of:

**No driving until OSA controlled.**

[DN 13] at 384. (Emphasis added.)

Plaintiff contends that this one-line treatment record notation is "Nurse Bratcher's expert opinion regarding fatigue functional limitations" and argues:

> The Plaintiff is not requesting that this Court "reweigh evidence in his favor" as asserted by the Defendant (Def. Memo., P. 7). Rather, the Plaintiff requests that this matter be remanded to the ALJ, so that the ALJ can adequately assess the expert medical opinion regarding functional limitations due to fatigue, which the Defendant has conceded the ALJ did not consider. (Def. Memo., P. 4). The ALJ has the responsibility to consider Nurse Bratcher's expert opinion and to provide a narrative explanation as to whether Nurse Bratcher's expert opinion regarding fatigue functional limitations is persuasive; it is not the job of the reviewing Court to make factual determinations by engaging in impermissible guesswork, speculation, and *post-hoc* rationalizations.

Plaintiff's Reply Brief, [DN 20] at 3.

A. Did the ALJ Properly Consider Nurse Bratcher's December 6, 2022, Treatment Note?

**ALJ's Duty of Articulation**. In his first argument, Plaintiff contends that the RFC found by the ALJ is flawed because it did not properly account for Nurse Bratcher's "no driving" limitation. An ALJ is required to "articulate how [he] considered the medical opinions and prior administrative medical findings." 20 C.F.R. § 404.1520c(a). An ALJ is not required to "defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, when evaluating the persuasiveness of medical opinions and prior

administrative findings, an ALJ must, at a minimum, explain how he considered the supportability and consistency of a source's medical opinion(s). 20 C.F.R. § 404.1520c(b)(2).

However, in order to trigger the ALJ's duty of articulation, the alleged opinion must be a "medical opinion" under the regulations. Social Security regulations draw a clear distinction between what constitutes a "medical opinion" versus what constitutes "other medical evidence," such as routine treatment notes. A "medical opinion" is defined as "a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in the ability to perform physical, mental, and other demands of work activities and the ability to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). "Other medical evidence" is defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3). There is no articulation requirement for other medical evidence.

The cited "expert medical opinion," as Plaintiff has interpreted it, is more accurately classified as "other medical evidence." APRN Bratcher's December 6, 2022, treatment note does not contain any limitation on duration. Additionally, it is not an opinion about what work Plaintiff can perform despite his impairments or whether he has impairment-related limitations or restrictions in his ability to work. This treatment note is therefore not a "medical opinion" the ALJ was required to evaluate using the persuasiveness factors of 20 C.F.R. § 404.1520c. Plaintiff's characterization of Nurse Bratcher's treatment note as an "expert opinion regarding fatigue functional limitations" and resulting assertion of error in the ALJ's failure to evaluate it as such has no factual or legal basis. As aptly noted by the Commissioner, Nurse Bratcher's treatment note

limiting Plaintiff to "[n]o driving until OSA controlled" did not include any other functional limitations whatsoever.

The ALJ was not required to explain the persuasiveness of Nurse Bratcher's treatment note because it did not amount to a "medical opinion" as defined by the regulations. That Nurse Bratcher memorialized a driving limitation in a treatment note does not convert it to a medical opinion. Nurse Bratcher provided no statement as to what Plaintiff is capable of doing despite his condition, nor did he opine whether any restrictions or limitations exist that would address Plaintiff's ability to perform the physical, mental, or other demands of work activities or adapt to other environmental conditions. *See* 20 C.F.R. § 404.1513(a)(2)(i)-(iv). Accordingly, the ALJ was not required to assess the supportability or consistency of Nurse Bratcher's treatment note, and Plaintiff's obstructive sleep apnea was properly addressed elsewhere in the ALJ's Decision.[4] The Court finds that the medical opinion evidence of record and prior administrative findings were examined appropriately by the ALJ under the applicable regulations.

**Harmless Error**. An ALJ must make detailed findings in order to enable the reviewing court to trace the logical bridge between the evidence and the result. *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544-546 (6th Cir. 2004). Plaintiff has not shown that the ALJ reversibly erred in failing to address a one-line treatment note of indeterminable duration. The ALJ thoroughly and fairly considered Plaintiff's chronological medical history in his Decision. [DN 13] at 27-31. While there are treatment notes, the record contains no medical source statement or other assessment from a treating source describing Plaintiff's prognosis, what Plaintiff can do despite his

[4] Plaintiff cites to *Palmore v. Comm'r of Soc. Sec*., 2021 WL 1169099 (S.D. Ohio Mar. 29, 2021) for the proposition that "in the absence of any explanation of the supportability and consistency factors, as the regulations require, the court is unable to conclude that the ALJ's consideration of [the] opinion is supported by substantial evidence." [DN 17] at 17. *Palmore* articulates that the ALJ must discuss how he evaluated the factors of consistency and supportability in evaluating a medical opinion; it does not articulate circumstances in which an ALJ should defer entirely to a medical opinion. *Palmore*, 2021 WL 1169099 at *4. For the reasons stated, Nurse Bratcher's treatment note is not a medical opinion. Finally, *Palmore* is not controlling authority.

impairments, and what restrictions Plaintiff may have. While the ALJ's RFC finding did not include a restriction of "no driving," that limitation would not preclude two of the three jobs identified by the vocational expert. Even assuming arguendo that the ALJ should have included the driving limitation in the RFC finding, the error is harmless because Plaintiff can perform work that exists in significant numbers in the economy that does not require driving. The ALJ found that Plaintiff could perform the requirements of router and sorter occupations, neither of which requires driving.[5] In other words, a driving limitation would have eliminated only one of the three jobs identified by the VE. Accordingly, the ALJ's failure to include a limitation of "no driving" in the RFC and subsequent hypothetical posed to the VE is harmless because it would not affect the outcome of the Decision. There is no reason to reverse the final decision of the Commissioner and remand the case for further proceedings.

**Residual Functional Capacity Findings**. The Decision indicates that the ALJ's RFC analysis was prepared "[a]fter careful consideration of the entire record," and that analysis constitutes some five pages of the twelve-page Decision. [DN 13] at 27-31. Consistent with the regulatory requirements, the ALJ addressed both the objective medical evidence and Plaintiff's subjective allegations regarding his alleged impairments and associated limitations. *See* 20 C.F.R. § 404.1545(a)(3) (requiring same). The Decision includes a detailed discussion of the medical and other evidence of record along with the ALJ's reasoning for either accepting or rejecting same.

---

[5] See Dictionary of Occupational Titles (DOT) No. 222.587-038 Router (light unskilled work, SVP 2), with 220,000 jobs in the national economy:

> Stamps, stencils, letters, or tags packages, boxes, or lots of merchandise to indicate delivery routes. Reads addresses on articles and determines route, using standard charts.

and DOT No. 573.687-034 Sorter (light unskilled work, SVP 2), with 123,000 jobs in the national economy:

> Sorts burned clay products, such as brick, roofing tile, and sewer pipe, according to form, color, and surface characteristics: Picks up products from kiln car, pallet, or handtruck, and examines products for defects, such as cracks, chipped edges, squareness, and discoloration. Sorts products into piles according to varying degrees of characteristics. Discards unusable products. May stack bricks in specified pattern for banding by machine. May be designated according to product sorted as Brick Sorter (brick & tile); Roofing-Tile Sorter (brick & tile); Sewer-Pipe Sorter (brick & tile).

The ALJ did not err in not including "more restrictive fatigue limitations." It is clear that the ALJ considered Plaintiff's sleep apnea, complaints of fatigue, and falling asleep, but found no support for greater restrictions in the medical treatment records:

> The claimant complained of fatigue, stating that on one occasion he was involved in a motor vehicle accident when he fell asleep at the wheel (Ex. 2F/53). However, the medical observations showed no findings consistent with the claimant's complaints of hypersomnolence. Rather, he consistently was observed to be alert and oriented, and displayed appropriate mood and affect, normal behavior, normal thought content, clear and fluent speech, and no memory deficits (E.g. Ex. 1F/9; 2F/8-9, 16, 53; 6F/31; 7F/29; 8F/5).

ALJ's Decision, [DN 13] at 29.

An ALJ is charged with determining a claimant's RFC "[b]ased on all the relevant evidence in [his] case record." 20 C.F.R. § 404.1545(a)(3). To support his RFC findings, the ALJ relied upon objective medical and other evidence in the record. The ALJ summarized Plaintiff's treatment records, function reports completed by both Plaintiff and his wife, Plaintiff's hearing testimony, and addressed the opinion evidence. [DN 13 at 26-31].

In weighing the medical opinion evidence and prior administrative findings before him, the ALJ considered the opinion of consultative examiner Dr. Khattar and found it only somewhat persuasive because the opinion was vague and equivocal, and was not stated in vocational terms. [DN 13] at 30. The ALJ also addressed the prior State agency assessments of Jacqueline Fister, M.D. and Timothy Gregg, M.D. and found them persuasive in their findings of Plaintiff's ability to perform light work with postural limitations and avoiding concentrated exposure to vibration. *Id*. The ALJ noted how the findings are supported by their evidence reviews and detailed explanations, and consistent with observations of Plaintiff's independent ambulation and normal strength of motion with little need for pain management; mental examinations showing him to be alert and oriented, with no observation of daytime somnolence. *Id*. Nonetheless, the ALJ gave

Plaintiff the benefit of the doubt with his subjective complaints of fatigue and shoulder pain when assigning additional limitations in the RFC to reduce his exposure to workplace hazards and limit his overhead reaching. There was no treating or other medical source opinion before the ALJ that opined greater limitations than those found by the ALJ, nor was there any request made at the hearing to hold the record open in order to obtain additional proof. [DN 13] at 42-43, 71.

Plaintiff bears the burden of proving a more restrictive RFC than found by the ALJ. *Dyson v. Comm'r of Soc. Sec.*, 786 F.App'x 586, 589 (6th Cir. 2019). Typically, a claimant may satisfy this burden by showing that either 1) a treating or other medical source opined limitations not contemplated by the ALJ's RFC and the ALJ erred in discounting the opinion; or 2) the ALJ improperly evaluated the limiting effects of other subjective symptoms. Plaintiff identifies no treating or other medical source who opined greater restriction than that found by the ALJ. On the contrary, the state agency program physicians opined <u>fewer</u> restrictions than the ALJ found.

B. <u>Did the ALJ properly evaluate Plaintiff's symptoms in assessing the extent of his limitations under 20 C.F.R. §1529(c)?</u>

As there was no treating or other medical source opinion offering more restrictive limitations than those found by the ALJ, the Plaintiff relies upon the second means of challenging the RFC. That is, Plaintiff argues that the ALJ erred as a matter of law by failing to properly evaluate his subjective complaints under the proper standard: whether Plaintiff's allegations "can reasonably be accepted as consistent" with the evidence of record instead of the ALJ's use of "not entirely consistent."[6] [DN 17] at 22. Plaintiff's argument appears to equate the ALJ's recitation of

[6] In support, Plaintiff cites to two Western District of Michigan cases in which cases were remanded for the ALJ's use of "not entirely consistent" instead of "can reasonably be accepted as consistent" verbiage. These cases were decided contrary to Sixth Circuit precedent affirming district courts findings that an ALJ decision utilizing the former language is supported by substantial evidence. *Deville v. Comm'r of Soc. Sec.*, 2024 WL 4249128 (W.D. Mich. Sept. 20, 2024), footnote 5.

his hearing testimony to the ALJ's "decid[ing] the Plaintiff's impairments reasonably could be expected to cause the alleged symptoms of falling asleep, during activities that include driving (Tr. 40) and watching television (Tr. 58-59), and taking an hour long nap every day (Tr. 55-56)." [DN 17] at 23.

"[D]eterminations regarding a claimant's subjective complaints rest with the ALJ." *Morgan v. Comm'r of Soc. Sec.*, 114 F.3d 1188 (6th Cir. 1997) (citing *Siterlet v. Sec'y of Health and Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). And the ALJ's assessments of a plaintiff's alleged symptoms "are virtually unchallengeable absent compelling reasons." *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017).[7] In formulating the Plaintiff's RFC, the ALJ indicated that he had

> considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.

ALJ Decision, [DN 13] at 27.

The ALJ discussed the two-step process[8] used to evaluate symptoms, and described Plaintiff's subjective complaints in detail including constant pain in his back, hips and knees; leg swelling requiring him to lie on his back throughout the day; limitations in his ability to stand for only ten minutes, sit for only one hour, walk only 50 feet, and need for a motorized scooter to go

[7] Social Security Ruling (SSR) 16-3p eliminated the use of the term "credibility." 2017 WL 518304 (S.S.A. Oct. 25, 2017). However, the underlying regulations governing symptom analysis have not changed, and cases interpreting those regulations remain relevant.

[8] *Duncan v. Sec'y of HHS*, 801 F.2d 847, 853 (6th Cir. 1986). First, the ALJ must "examine whether there is objective medical evidence of an underlying medical condition." *Id.* If there is, then the ALJ must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* When the reported pain and other symptoms suggest an impairment of greater severity than shown by the evidence, the ALJ will consider other information and factors which may be relevant to the degree of pain and other symptoms alleged. 20 C.F.R. § 404.1529(c)(3).

longer distances; his ability to lift only five pounds; difficulties squatting, bending, kneeling, and climbing stairs; pain that wakes him up at night and poor sleep exacerbated by sleep apnea; and daytime fatigue affecting his ability to pay attention and requiring a daily hour-long nap. [DN 13] at 27-28. In addition, he considered the third-party function report submitted by Plaintiff's wife which corroborated his allegations of disabling limitations. *Id*. The ALJ then made the following findings concerning Plaintiff's symptoms:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

ALJ Decision, [DN 13] at 28.

Had the ALJ only made "a single, conclusory statement that [Plaintiff's] alleged symptoms were inconsistent with other evidence [that] would have constituted legal error." *Carter v. Comm'r of Soc. Sec*., No. 5:24-cv-87-KKC, 2024 WL 5055830 at *3 (E.D. Ky. Dec. 10, 2024). Here, ALJ Morholt provided several paragraphs of symptom analysis. *See id*. (no error found where ALJ provided several pages of analysis that discussed evidentiary sources and required factors). Consistent with 20 C.F.R. § 404.1529(c) and SSR 16-3p, the ALJ considered Plaintiff's subjective allegations of limitations and pain symptoms, the objective medical evidence, examination findings, level of treatment, and the opinions of the state agency physicians.

The ALJ's discussion of the evidence with citations to the record includes Plaintiff's remote history of right knee arthroscopy in 2019 which was followed by a second complete ACL tear with moderate to severe cartilage loss that was not surgically revisited and treated with only ibuprofen; a January of 2022 office visit for paresthesia in his lower extremities, but physical examination showed normal range of motion in all joints, no lumbar spine tenderness, negative straight leg

raise, and no focal neurological deficits; ongoing routine and conservative treatment with Ibuprofen as needed and an "active lifestyle" including a May 2020 decision to forego ER treatment due to the demands of his farm; records consistently indicating no acute distress, normal strength and range of motion, normal sensation and no focal deficits; inconsistency between Plaintiff's alleged need for a motorized scooter and observations of his independent ambulation and normal gait; inconsistency between Plaintiff's alleged need to elevate his lower extremity due to swelling and only infrequent references in the medical record of lower extremity edema (excepting Plaintiff's hospitalization for cellulitis in August 2023); inconsistency between Plaintiff's alleged fatigue due to obstructive sleep apnea and numerous medical records finding no hypersomnolence, finding him instead to be alert and oriented, displaying appropriate mood and affect, normal behavior, normal thought content, clear and fluent speech, and no memory deficits; despite Plaintiff's obesity which can exacerbate each of Plaintiff's severe impairments, evidence showed good overall strength and range of motion, ambulation with a normal gait, and effective pain control, along with mental health status examinations showing him to be fully alert. [DN 13] at 28-29. Based upon this Court's review, the ALJ properly considered Plaintiff's symptoms in light of the objective medical evidence, examination findings, and ongoing routine and conservative level of treatment. The ALJ applied the proper legal standard in evaluating Plaintiff's subjective symptoms, and his findings are supported by substantial evidence.

## IV. CONCLUSION

Having reviewed the medical records, the Plaintiff's testimony at the hearing, the state agency findings and other evidence in the administrative record, the undersigned finds that the ALJ's Decision stands solidly on substantial evidence. Regardless of how the undersigned may

view the evidence, it is not this Court's place to re-try or reevaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court's review is limited to determining whether substantial evidence exists to support the ALJ's Decision and if the ALJ followed the applicable law. "[A]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

## V. ORDER

Because Plaintiff's arguments are unpersuasive and the Administrative Law Judge's Decision is supported by substantial evidence and comports with applicable law, the Commissioner's final decision is hereby AFFIRMED, and Plaintiff's Complaint is DISMISSED.

August 21, 2026

**Lanny King, Magistrate Judge**
**United States District Court**